UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| HUMAN POWER OF N COMPANY, d/b/a HUMANN, f/k/a NEOGENIS LABS, INC.<br><br>    Plaintiff,<br><br>v.<br><br>THERMOLIFE INTERNATIONAL, LLC,<br><br>    Defendant. | Case No. 6:22-cv-179 |

**ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT**

Defendant Human Power of N Company, d/b/a HumanN ("Plaintiff" or "HumanN"), by and through its counsel, files this Original Complaint and Request for Declaratory Judgment of Non-infringement and Invalidity of United States Patent No. 11,083,747 (the "'747 patent"), and asserts claims against Defendant ThermoLife International, LLC ("ThermoLife") as follows:

**I.**
**INTRODUCTION**

1.      This is an action for a declaratory judgment arising under the patent laws of the United States, Title 35 of the United States Code. HumanN seeks a declaratory judgment that it does not infringe any claim or claims of the '747 patent. In the alternative, HumanN seeks a declaratory judgment that the claims of the '747 patent are invalid under 35 U.S.C. §§ 101, 102, 103, 112 and/or unenforceable due to Inequitable Conduct.

**II.**
**THE PARTIES**

2.      Human Power of N Company d/b/a HumanN is a Texas Corporation with its principal place of business at 1250 S. Capital of Texas Highway, Building I-360, Austin, Texas 78746.

3.     Upon information and belief, Defendant ThermoLife is a limited liability company organized and existing under the laws of Arizona. According to the Arizona Secretary of State filings, ThermoLife's registered agent is Ronald L. Kramer, who states that his address is 1334 E. Chandler Blvd., #5-D76, Phoenix, Arizona 85048; however, this location is a Mailboxes and More store.

4.     Upon information and belief, ThermoLife has an additional business address located at 1220 E. Hill Street, Signal Hill, California 90755.

### III.
### JURISDICTION AND VENUE

5.     This Court has federal question jurisdiction because this action arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

6.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

7.     ThermoLife has committed acts within this judicial district giving rise to this action and has established minimum contacts with the forum such that the exercise of jurisdiction over ThermoLife would not offend traditional notions of fair play and substantial justice.

8.     ThermoLife has submitted to this Court's jurisdiction with regard to case number 6:21-cv-144, currently pending before this Court, and concerning the same two parties, patents in the same family as the '747 patent, and the same and related HumanN products.

9.     ThermoLife is subject to the Court's personal jurisdiction, and venue is proper at least under 28 U.S.C. § 1391(b) and (c).

10.     A substantial, immediate, real, concrete, and justiciable controversy exists between HumanN and ThermoLife as to whether HumanN is infringing or has infringed the '747 patent

and whether the '747 patent is invalid. As set forth below, ThermoLife has invoked patents related to the '747 patent to accuse HumanN's products of infringement and has taken numerous other acts to interfere with HumanN's sales of its products. HumanN therefore faces a threat of infringement litigation involving the '747 patent and a threat of interference with its commercial activities arising from ThermoLife's efforts to enforce the '747 patent. A judicial declaration is necessary to determine the parties' rights.

## IV.
## FACTUAL BACKGROUND

11.     Founded in 2009, HumanN is committed to bringing the best nitric oxide products to people across every phase of life. To meet this goal, HumanN develops, markets, and sells a variety of high-quality foods and dietary supplements including Neo40® ("Neo40"), BeetElite® ("BeetElite"), and the SuperBeets® ("SuperBeets") family of products that include SuperBeets powders, SuperBeets Heart Chews, and others.

12.     HumanN sells its products through a variety of retail channels, including brick-and-mortar stores such as GNC and online platforms such as that offered by the online retail giant Amazon. As ThermoLife knows, each year, HumanN sells a substantial amount of its inventory through Amazon's website, amazon.com.

13.     ThermoLife does not develop or sell its own supplements or foods. Instead, ThermoLife holds a patent portfolio, which includes the '747 patent, and makes money by forcing companies wishing to market nitric oxide supplement products to purchase non-exclusive sub-licenses and/or ingredients from ThermoLife, whether or not the companies actually practice the patents ThermoLife licensed, and whether or not those licensed patents are enforceable.

14.     ThermoLife's single-page website, www.thermolife.com, is focused exclusively on its patents and the ingredients it claims are covered by those patents. The website advises visitors

thinking of making a "dietary supplement with nitrates in it" that "there is a very good chance" the product will infringe a ThermoLife patent, and admonishes those businesses to negotiate a license with it.

15. ThermoLife has established a deserved reputation for aggressive, unscrupulous litigiousness, and has sued countless supplement companies in an effort to coerce settlements, licensing agreements, and supply contracts for allegedly patented ingredients. Notably, courts have held that ThermoLife's litigation tactics are improper. *E.g., ThermoLife Int'l, LLC v. GNC Corp.*, 922 F.3d 1347, 1355 (Fed. Cir. 2019) (ThermoLife and counsel brought "frivolous claims," and their "motivation was seemingly to extract nuisance-value settlements"); *BPI Sports, LLC v. ThermoLife Int'l, LLC*, No. 19-60505-CIV-SMITH, 2021 WL 2946170, at *2 (S.D. Fla. July 14, 2021) (adopting magistrate judge's report and recommendation and sanctioning ThermoLife where its owner Ron Kramer "committed a fraud upon the Court when [he] knowingly fabricated evidence to advance his case and repeatedly attempted to obstruct discovery of that fraud").

16. ThermoLife's campaign of harassment against HumanN began years ago, and has included a series of three federal lawsuits. ThermoLife brought the first two of these suits in the District of Arizona. The first of these Arizona suits, Case No. 16-cv-2070 (*ThermoLife I*), accused HumanN's SuperBeets, BeetElite, and Neo40 of infringing the '140 patent. After *ThermoLife I* had been pending for over a year, however, ThermoLife voluntarily dismissed it without prejudice. ThermoLife then brought Case No. 18-cv-2980 ("*ThermoLife II*"), also in the District of Arizona, this time asserting claims of false advertising and false patent marking. While *ThermoLife II* was pending, ThermoLife sued HumanN a third time, in Case No. 21-cv-0144 (W.D. Tex.), styled *ThermoLife Int'l, LLC v. Human Power of N Co. d/b/a HumanN, f/k/a NeoGenis Labs, Inc.*

- 4 -

("*ThermoLife III*"). After it brought *Thermolife III*, ThermoLife then voluntarily dismissed *ThermoLife II*, again without prejudice.

17.     *Thermolife III*, which remains pending, involves U.S. Patent Nos. 8,455,531 ("'531 patent"), 9,180,140 ("'140 patent"), 10,555,968 ("'968 patent"), and 10,842,813 ("'813 patent"). All but the '531 patent are related to the '747 patent.

18.     ThermoLife's hit-and-run tactics of serially filing and then dismissing without prejudice lawsuits against HumanN is consistent with, and on information and belief, an integral part of, a self-described "war" ThermoLife declared on HumanN. On September 3, 2018, after its voluntary dismissal of *ThermoLife I*, ThermoLife's owner, Ronald Kramer, sent an email to Joel Kocher, HumanN's co-founder and CEO, threatening that if he did not "make a deal with us and take a license," then ThermoLife would "crippl[e] HumanN."

19.     In the email, ThermoLife threatened to put HumanN "out of business." ("YOU are not sharing any of the golden eggs with us so why should we care about killing your Golden Goose?"). Bragging that "[a] full legal assault is now 1000% ready to implement in case we need to declare war," and that it would be "fun" "to implement the strategy we have prepared to systematically dismantle You and HumanN," ThermoLife told HumanN it had "10 days to salvage the future of your company[.]" ThermoLife then declared that: "we have no problem killing your proverbial goose, by skinning it alive, then gutting it and eating it for ourselves."

20.     In addition to serial litigation, ThermoLife has repeatedly resorted to extra-judicial tactics to coerce HumanN to pay it large sums of money. In furtherance of its stated goal of "crippling" HumanN in order to coerce a settlement, and while *ThermoLife II* was pending, ThermoLife falsely communicated to Amazon that HumanN's SuperBeets, BeetElite, and Neo40 products infringed a ThermoLife patent. In March 2019, Amazon suspended sales of these

products for over a month, requiring HumanN to expend considerable resources to demonstrate that its products did not infringe, and further costing HumanN sales of its products and customer good will.

21.     Bolstered by its initial success in injuring HumanN by interfering with HumanN's business relationship with Amazon, and even after bringing *Thermolife III* in this Court, ThermoLife has repeatedly invoked Amazon's recently crafted Utility Patent Neutral Evaluation Process (the "Amazon Process") against HumanN, falsely claiming that the HumanN products at issue in *Thermolife III* infringe the patents also at issue in *Thermolife III*.

22.     A patent owner or exclusive licensee initiates the Amazon Process unilaterally by submitting a Patent Neutral Evaluation Agreement ("Agreement") to Amazon that identifies products listed on amazon.com that allegedly infringe a specified claim of the patent holder's asserted patent. The accused infringer must either: (1) submit to the evaluation by executing the Agreement within three weeks and paying $4,000; or (2) have their listings on accused products removed from amazon.com. If the seller executes the Agreement, the Amazon-appointed evaluator reviews the patent holder's patent infringement claim and makes a yes or no decision about whether the patent covers the product listings. There is no discovery, trial, or hearing allowed. The only two defenses other than non-infringement are: (i) a court has already found the asserted claim invalid or unenforceable; or (ii) the evaluator can independently observe, such as by seeing an on-sale date on www.amazon.com or by using the Wayback Machine, that the products were available for sale one year or more before the asserted patent's earliest effective filing date. The lack of an invalidity defense in the Amazon Process is critical for ThermoLife, whose patents are invalid, unenforceable, and tainted by inequitable conduct.

23.     Since filing *Thermolife III*, ThermoLife has invoked the Amazon Process against HumanN three times. On April 1, 2021, ThermoLife initiated the Amazon Process, accusing BeetElite and SuperBeets products of infringing the '968 patent. On July 6, 2021, HumanN received another notice that ThermoLife had resumed the Amazon Process. On November 2, 2021, HumanN received notice that ThermoLife yet again reengaged the Amazon's Process against HumanN, this time asserting that HumanN had infringed the '813 patent.

24.     Amazon, however, may choose to defer to judicial proceedings when the Amazon Process concerns a patent in suit. Amazon's procedures accordingly provide that "[i]f there is litigation pending on a patent subject to a proposed or pending Evaluation, Amazon may decide not to initiate or suspend an Evaluation until the completion of that litigation." Consistent with this policy, Amazon discontinued each of the Amazon Process proceedings ThermoLife had initiated against HumanN when Amazon was informed that the patents Thermolife asserted were part of the *Thermolife III* case.

25.     HumanN reasonably anticipates that ThermoLife will assert that HumanN has infringed the '747 patent, whether by filing a new lawsuit in this Court or another court, seeking leave to amend its claims in *Thermolife III*, or pursuing the Amazon Process, as ThermoLife has done multiple times already and threatened to do again. This fear, based on reasonably-anticipated litigation, commercial interference, or other extra-judicial action, establishes a justiciable case or controversy between HumanN and ThermoLife.

**V.**
**CLAIMS FOR RELIEF**

**COUNT I**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '747 PATENT**

26.     HumanN restates and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

27.    Upon information and belief, ThermoLife is the exclusive licensee of the '747 patent.

28.    By (a) threatening to initiate, initiating, and pursuing a lawsuit alleging infringement of patents related to the '747 patent, (b) instituting the Amazon Process by claiming infringement of patents related to the '747 patent, and (c) threatening to re-start the Amazon Process again, ThermoLife has created a justiciable controversy regarding whether HumanN's products infringe claims of the '747 patent. HumanN's products do not infringe and have not infringed the '747 patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents, or in any manner whatsoever. For example and without limitation, HumanN's SuperBeets, SuperBeets Heart Chews, SuperBeets Energy Chews, SuperBeets Memory + Focus Chews, SuperBeets Black Cherry, Neo40, and BeetElite products, alone or in combination, do not infringe the '747 patent.

29.    A judicial decision is necessary and appropriate so that HumanN may ascertain its rights with respect to the '747 patent.

30.    HumanN seeks, and is entitled to, a declaration from the Court that HumanN has not and does not infringe any valid and enforceable claim of the '747 patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents, or in any manner whatsoever.

### COUNT II
### DECLARATORY JUDGMENT OF INVALIDITY DUE TO PATENT-INELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101

31.    HumanN restates and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

32. Claims 1-7 of the '747 patent are invalid under 35 U.S.C. § 101 because they are directed to the patent-ineligible subject matter of decreasing systolic blood pressure by administering inorganic nitrate to adult humans.

33. There is no concrete or tangible form to the claimed invention of the '747 patent. Instead, the claims are directed to one of the most basic and common activities of any health-conscious adult: ingesting nitrate, a substance found in most fruits and vegetables, to lower blood pressure. Nearly every set of dietary guidelines recommends consuming dark, leafy greens, the inevitable result of which is to reduce blood pressure.

34. HumanN seeks, and is entitled to, a declaration from the Court that each claim of the '747 patent is invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

## COUNT III
## DECLARATORY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. §§ 102 AND/OR 103

35. HumanN restates and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

36. As a non-limiting example, the claims of the '747 patent are invalid under the patent, printed publication, prior public use and/or on-sale bars of 35 U.S.C. § 102, and/or rendered obvious under the patent, printed publication, prior public use and/or on-sale bars under 35 U.S.C. § 103.

## COUNT IV
## DECLARATORY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. §§ 112

37. HumanN restates and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

38. Claim 1 of the '747 patent is invalid under 35 U.S.C. § 112. As a non-limited example, the claim is indefinite for failing to describe with reasonable certainty the scope of the claim with respect to the limitation "administering inorganic nitrate ($NO_3^-$)."

## COUNT V
## DECLARATORY JUDGMENT OF UNENFORCEABILITY DUE
## TO INEQUITABLE CONDUCT

39.     HumanN restates and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

40.     Upon information and belief, the '747 patent is unenforceable based on the inequitable conduct and repeated breaches of the duty of candor by those with a duty of candor in connection with the prosecution of the '747 patent. Specifically, the original applicant of the '747 patent failed to disclose prior art that anticipated and rendered obvious claims that are nearly and materially identical to Claim 1 of the '747 Patent. This intentional failure to disclose is more egregious and dangerous when viewed in light of the intent by the '747 patent's exclusive licensee, ThermoLife, to assert its valueless patent portfolio not merely in court, where prior art can be raised as a defense to infringement, but via the Amazon Process, where it cannot.

41.     In employing the Amazon Process—a venue wherein inequitable conduct defenses are not available—and the threat of financial harm it entails, ThermoLife seeks to extract licensing fees for knowingly invalid patents obtained by hiding prior art.

42.     On June 22, 2021, counsel for HumanN served a Petition for Post Grant Review ("PGR") of the immediate parent of the '747 patent on prosecution counsel for Heartbeet, Ltd. *See* Petition at Certificate of Service, *Human Power of N Co. v. Heartbeet Ltd.*, PGR2021-00094 (June 22, 2021) (Paper No. 1). Heartbeet, Ltd. ("Heartbeet") was the original assignee of both the '813 patent and the '747 patent, which is a continuation of the '813 patent.

43.     In the PGR Petition, counsel for HumanN discussed, *inter alia*, prior art references which anticipate Claim 1 of the '813 Patent. Those references include: L. Brunton, *An Address on Blood Pressure In Man: Its estimation and indications for treatment*, The British Medical Journal,

pp. 64–67 (July 10, 1909) ("Brunton"). *See* Petition at 32, 65, *Human Power of N Co. v. Heartbeet Ltd.*, PGR2021-00094 (June 22, 2021) (Paper No. 1).

44.     Claim 1 of the '813 Patent is slightly narrower than its child patent, the '747. Claim 1 of the '813 Patent, from which all other claims depend, recites as follows: "**A method of decreasing systolic blood pressure, the method comprising administering inorganic nitrate (NO$_3$ ⁻) to an adult human subject requiring a reduction in systolic blood pressure.**" '813 Patent, at Claim 1 (emphasis added).

45.     Claim 1 of the '747 Patent, from which all other claims depend, recites as follows: "**A method of decreasing systolic blood pressure, the method comprising administering inorganic nitrate (NO$_3$ ⁻) to an adult human subject.**" '747 Patent, at Claim 1 (emphasis added). Notably, Claim 1 of the '747 patent does not require the administration to a person requiring a reduction in blood pressure—that is the only substantive change between Claim 1 of the '813 patent and Claim 1 of the '747 patent.

46.     As described more fully in the PGR Petition, the Brunton Reference addressed "blood pressure in man" and disclosed a method of "keep[ing blood] pressure down" by administering "[t]en grains of ***potassium nitrate***, with a like amount of bicarbonate and half a grain to two grains of sodium nitrite, as a powder, to be taken every morning in hot water or an aperient water." *See* Brunton, at 64–66. Brunton thus discloses a method of decreasing systolic blood pressure by administering inorganic nitrate—potassium nitrate—to an adult human subject.

47.     When prosecution counsel for Heartbeet received the PGR Petition, the '747 Patent was still in the application phase. More specifically, Application 17/061,321, which later issued as the '747 Patent, had been given a notice of allowance, but issuance would come nearly a month

later, on July 21, 2021. *See* Notice of Allowance, Application No. 17/061,321 (Apr. 21, 2021); Issue Notification, Application No. 17/061,321 (July 21, 2021).

48.　　HumanN *specifically identified* the pending continuation that issued as the '747 patent in the PGR Petition as a "matter [that] could affect, or be affected by, a decision" in the PGR proceeding. *See* Petition at 1, *Human Power of N Co. v. Heartbeet Ltd.*, PGR2021-00094 (June 22, 2021) (Paper No. 1) (listing U.S. Patent Application No. 17/061,321, which later issued as the '747 patent).

49.　　Despite receiving notice of the prior art that anticipated the '813 patent, and therefore necessarily anticipated the '747 patent, the applicant for the '747 patent did not disclose this material prior art to the PTO.

## VI.
## MATERIAL MISREPRESENTATION

50.　　Pursuant to 37 C.F.R. § 1.56, inventors and prosecuting attorneys are individuals who owe a duty of candor to the United States Patent and Trademark Office during prosecution of patent applications. The attorneys who prosecuted the '747 and '813 patents—the law firm of Booth Udall Fuller, PLC—was obligated under this duty of candor. Those prosecuting attorneys violated this duty of candor.

51.　　Because the same firm which received the PGR Petition for the '813 patent also prosecuted the application which issued as the '747 patent, those attorneys had specific knowledge of the prior art discussed in the PGR Petition.

52.　　ThermoLife's litigation counsel, Amy E. Hayden and the Russ August & Kabat Law Firm, were also aware of the PGR Petition, the prior art, and HumanN's invalidity contentions *before* the '747 patent issued, because they entered an appearance in the PGR. *See* Power of

Attorney, *Human Power of N Co. v. Heartbeet Ltd.*, PGR2021-00094 (July 13, 2021) (listing Amy E. Hayden as lead counsel).

## VII.
## INTENT TO DECEIVE

53.     On information and belief, the prosecuting attorneys for the '747 patent acted with specific intent to deceive the PTO when they failed to disclose, while under a duty to disclose, the prior art discussed in the '813 patent's PGR Petition.

54.     As described above, by the time the PGR Petition was filed—mid 2021—HumanN and ThermoLife had already been engaged in three lawsuits related to patents in the same family. Heartbeet's business model was to license its patents exclusively to ThermoLife. ThermoLife's business model, however, does not involve producing products under that license, or even merely suing to prevent others from doing so. Instead, ThermoLife asserts those patents via the Amazon Process, wherein the alleged infringers do not have the ability to challenge ThermoLife for its blatant inequitable conduct.

55.     As further evidence of intent to deceive, counsel for ThermoLife *still* has not submitted the prior art discussed in the '813 patent's PGR petition to the Patent Office.

56.     The single most reasonable inference from ThermoLife's and its counsel's knowing omissions is that ThermoLife intended to deceive the PTO as to the patentability of the '747 patent in view of the prior art disclosed in the '813 patent's PGR Petition. ThermoLife could then take the issued patent, attempt to invoke the Amazon Process (with no procedure for challenging enforceability and a limited procedure for challenging validity) and seek to extract a settlement from HumanN.

## VIII.
## CONCLUSION

57.     The '747 patent's applicant committed repeated, material, and intentional misrepresentations to the PTO, which constitute breaches of the duty of candor by those who owed a duty of candor to the Patent Office. Because these misrepresentations were made in conjunction with the prosecution of the application that resulted in the '747 Patent, they render the '747 patent unenforceable under the doctrine of inequitable conduct. The '140, '968, and '813 patents are unenforceable as well through the doctrine of infectious unenforceability.

## **RELIEF REQUESTED**

WHEREFORE, HumanN, reserving its right to amend its pleadings and to add additional claims, and to add additional defenses and affirmative defenses to any counterclaims, and intending to consolidate this case with other pending related litigation in this Court, respectfully requests that this Court enter judgment in its favor as follows and award HumanN the following relief:

(a)     adjudge and declare that HumanN has not infringed and is not infringing any valid and enforceable claim of the '747 Patent;

(b)     adjudge and declare that the claims of the '747 patent are invalid; and

(c)     adjudge and declare that the claims of the '747 patent were procured through inequitable conduct and are unenforceable.

Dated: February 21, 2022

Respectfully submitted,

*/s/Brett C. Govett*

**Brett C. Govett**
Texas Bar No. 08235900
**Jacqueline G. Baker**
Texas Bar No. 24109609
**Norton Rose Fulbright US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
brett.govett@nortonrosefulbright.com
jackie.baker@nortonrosefulbright.com

**Stephanie DeBrow**
Texas Bar No. 24074119
**Michael Pohl**
Texas Bar No. 24105942
**Gabriel Culver**
Texas Bar No. 24116240
**Norton Rose Fulbright US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone: (512) 536-3094
Facsimile: (512) 536-4598
stephanie.debrow@nortonrosefulbright.com
michael.pohl@nortonrosefulbright.com
gabriel.culver@nortonrosefulbright.com

**Saul Perloff**
Texas Bar No. 00795128
**Robert L. Rouder**
Texas Bar No. 24037400
**SHEARMAN & STERLING LLP**
300 West 6th Street, Suite 2250
Austin, Texas 78701
Telephone: (512) 647-1970
saul.perloff@shearman.com
bob.rouder@shearman.com

**ATTORNEYS FOR PLAINTIFF**
**HUMAN POWER OF N COMPANY**